McCABE LATHE & MACHINERY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3072. Promulgated January 11, 1928.

*Henry Mannix, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

OPINION.

PHILLIPS: Petitioner claims a deduction of $25,000 as compensation paid to P. F. Sheeran during 1919 for services rendered. The Commissioner disallowed this deduction on the ground that it was paid for other consideration than salary and treated it as dividends to the estate of J. J. McCabe.

Sheeran had been employed by J. J. McCabe, petitioner's predecessor, as general sales manager for many years. He had received a salary of $30 a week and, after the end of the year when the profits

had been determined, additional compensation varying from $2,065 in 1913 to $9,000 in 1915; $10,000 for 1916, and $15,000 for 1917. When petitioner was incorporated as of January 1, 1918, it took over the business of J. J. McCabe, including his assets and liabilities, in exchange for its stock. It continued the services of Sheeran as secretary and general sales manager on the same basis as he had worked for McCabe, paying him $30 a week as a drawing account during 1918, and for approximately the first four months of 1919. Sheeran devoted all his time to petitioner's business. There was an agreement between himself and McCabe under which he was entitled to receive additional compensation for 1918. He claimed the amount to be $23,000. McCabe had become a mental incompetent in 1918 and the petitioner corporation disputed its liability to pay this amount. In April, 1919, upon failure to come to any agreement concerning additional compensation to be paid for 1918, Sheeran resigned and instituted suit against petitioner for $23,000 for additional compensation for 1918 and $6,000 for additional compensation for the time he had worked during 1919. At the same time he set up a competing business. The suit was compromised and under the terms of the compromise agreement Sheeran was paid $50,000 in settlement of his claim for compensation, and for other considerations, including giving up of the competing business and the release of all claims against the estate of J. J. McCabe arising out of contract or a will or codicil of J. J. McCabe.

The evidence establishes the existence of an agreement to pay Sheeran additional compensation based on profits, which compensation, judged by the amount paid in prior years, would have amounted to at least $15,000 for 1918 and $5,000 for the first four months of 1919. It is proper to treat the payment made in 1919 as having been made to that extent in discharge of an obligation for services rendered in 1918 and 1919. The question then arises whether the $15,000 paid in 1919 for services rendered in 1918 may be deducted in the year of payment, the petitioner having admitted no liability in 1918, but having disputed such liability and having accrued no amount upon its books in that year.

In computing net income the statute provides for the deduction of " all ordinary and necessary expenses paid or incurred in the taxable year in carrying on any trade or business, including a reasonable allowance for salaries and other compensation for personal services actually rendered." In *Appeal of Bartles Scott Oil Co.*, 2 B. T. A. 16, the Board had before it a similar situation arising under the provisions of the statute allowing a deduction of taxes paid or accrued within the taxable year. There certain state inspection fees were payable at the time of inspection. Payment thereof was withheld

until litigation instituted to test the validity of the statute had been completed and it was sought to deduct these fees in the year when paid. We there held that these fees accrued at the time of inspection and might not be deducted in the subsequent year. In the same manner compensation for services is to be deducted in the year in which the liability arose and the date of accrual may not be postponed by the debtor by disputing either the liability or the amount thereof.

The J. J. McCabe Punch & Shear Co., affiliated with petitioner, had leased a certain tract of land in 1918 for a term of five years and had erected thereon a building, said building to revert to the lessor at the end of the term. This building was to be used for the manufacture of punch and shear machines which were particularly adapted for the requirements of ship-building yards, for punching holes in and shearing the large plates used in the construction of ships.

Upon the signing of the armistice and the termination of the war, the demand for this company's production ceased. The business was discontinued and the plant shut down early in 1919. The punch and shear company thereupon ceased to use the building for the manufacture of punch and shear machines and leased it for the remainder of the five-year term at a rental of $1,500 per year.

The Commissioner allowed as a deduction for the year 1919 depreciation at the rate of 20 per cent, being predicated on the five-year term of the lease. The petitioner contends that, having abandoned the building in 1919 for the purpose for which it was erected and having sublet it for the balance of the term at a definite amount of rental, it is entitled to a deduction, as obsolescence, of the difference between the net income from its lease and the depreciated cost of the building as of January 1, 1919.

A deduction for obsolescence clearly contemplates that in addition to actual wear and tear, a further amount should be deducted because, due to some known reason, the asset will have to be discarded prior to the expiration of its normal life. In this case the building was not abandoned nor discarded when it ceased to be used for the manufacture of punch and shear machines. On the contrary the building was sublet by petitioner's affiliated company at a rental which yielded $900 a year for the remainder of its term in excess of the rental which it was required to pay. It did not assign and sell to its lessee its interest in the property, it gave only the possession and use of the property for the remainder of the term. During all the remainder of the term of its lease petitioner's affiliated company received an income from the use of the building. It is not material that this income was less than it might have been had the Punch & Shear Co. continued the use of the building for the purpose for which it was erected, nor is it material that it was used for a different

purpose. The mere fact that a building is used for a purpose different than that originally intended does not determine the building to be obsolete. The loss which will be sustained over the remainder of the lease, after allowing for exhaustion of the cost of the building, is deductible yearly and can not be anticpated upon the theory that obsolescence has taken place when, in fact, the building continues . to be suitable for the purpose of its erection and all that has taken place is a reduction in its income-producing capacity. The determination of the Commissioner as to this issue is, therefore, sustained.

The petitioner claims that the Commissioner overstated the inventory of its affiliated company as of December 31, 1919, by including therein two punch and shear machines at a value of $8,000. It appears that the Commissioner has used the same value for inventory that was used by the affiliated company in making its tax return. While it is demonstrated that these two machines were useless and worth only their scrap value, there is nothing in the record from which we may learn whether or not these machines were included in the inventory in question and, if so, at what value. The inventory was in the records of the company but was not produced at the hearing. The witness thought it probable that these machines were included. Something more than such indefinite testimony is required before we may attempt to find that the inventory used by the company in its tax return and adopted by the Commissioner is erroneous.

Reviewed by the BOARD.

> *Decision will be entered accordingly upon 15 days' notice, under Rule 50.*